**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Prashanth Reddy Dynasty Trust<br>*and*<br>Aaksa Jai, LLC<br>Plaintiffs,<br>v.<br>Thomas J. McDonough, TJM-HSH, LLC, TJM Capital Partners LLC<br>*and*<br>Hayes Services Holdings, LLC,<br>Defendants. | Case No. 1:25-cv-14128<br>Judge:<br>Jury Demand |

## COMPLAINT

Plaintiffs, Aaksa Jai, LLC ("Aaksa"), a Delaware limited liability company, and Prashanth Reddy Dynasty Trust, an Irrevocable Trust, (the "Trust," and collectively with Aaksa, "Plaintiffs"), by and through their undersigned counsel, file this Complaint against Defendants, Thomas J. McDonough, an individual, TJM-HSH, LLC, TJM Capital Partners LLC (collectively with TJM-HSH, "TJM") and Hayes Services Holdings, LLC ("Hayes Services"), limited liability companies, and alleges as follows:

## NATURE OF THE CASE

1. This action arises out of Defendants' fraud in connection with Plaintiffs' $1.75 million investment in Hayes Services, a company managed and controlled by Tom McDonough

and TJM. Defendants' actions constitute violations of the Securities Exchange Act of 1934, the Illinois Securities Law of 1953, and constitute common law fraud and misrepresentation.

2. In December 2021, McDonough and others at TJM—in soliciting Plaintiffs' investments—represented to Plaintiffs that TJM would acquire an existing business, Hayes Mechanical, a full-service mechanical contractor specializing in both commercial and industrial work, and divide it into two independent entities: Hayes Services and Hayes Commercial, each with a different investment thesis. (*See* **Exhibit A**, "Hayes Equity Raise Deck" at p. 1). The utilities and boiler servicing business would be spun out into Hayes Services, and the remaining business would be Hayes Commercial.

3. Specifically, McDonough and TJM represented that an investment into Hayes Commercial's would be a more typical private equity investment—*i.e.*, TJM and its co-investors would continue to invest and grow the business with investors receiving the majority of their returns upon exit. They explained that an investment in Hayes Services, on the other hand, would function as a wind-down investment with investors receiving returns as regular distributions from Hayes Services fulfilling boiler maintenance contracts with the expectation that those distributions would start large and reduce over time as the existing book of service business was wound down.

4. Plaintiffs made it clear to McDonough and TJM that they were not interested in investing in or growing a boiler business (*i.e.,* Hayes Commercial), but they were interested in the economics and risk presented by a wind-down investment (*i.e.* Hayes Services).

5. McDonough and TJM represented that (1) Hayes Mechanical was being split into "**<u>2 separate entities/investments</u>**" (*i.e.* Hayes Services and Hayes Commercial) such that Hayes Services would be an "**<u>independent business</u>**"; that (2) Hayes Services would be acquired with an "**<u>all equity financed purchase</u>**" and therefore have "**<u>no senior term loan</u>**" and "**<u>$0</u>**" in "**<u>Bank</u>**

**Debt**" or "**Seller Debt**"; and (3) given the nature of its operations, Hayes Services' capital needs would be low, such that investors would receive cash distributions amounting to approximately [redacted] of their investments within the first three years (and would receive a total of [redacted] of their investments back in distributions by the end of 2025). (*See id.* at pp. 1, 2, 12, 16).

6. Relying on Defendants' representations that an investment in Hayes Services was separate and independent from one in Hayes Commercial, Plaintiffs elected to invest in Hayes Services only.

7. Plaintiffs had previously invested in other opportunities presented by McDonough, and this prior relationship between the parties created a general sense of trust. Thus, Plaintiffs were inclined to rely on McDonough and TJM's representations.

8. On or around December 12, 2021, Hayes Services entered into a Subscription Agreement with the Trust. The Trust, through the Subscription Agreement, agreed to purchase 750,000 Class A Common Units in Hayes Services at One Dollar ($1.00) per Unit, for an aggregate purchase price of $750,000. (**Exhibit B**, "Trust Subscription Agreement")[1]. On or around December 15, 2021, Hayes Services entered into a Subscription Agreement with Aaksa. Aaksa, through the Subscription Agreement, agreed to purchase 1,000,000 Class A Common Units in Hayes Services at One Dollar ($1.00) per Unit, for an aggregate purchase price of $1,000,000. (**Exhibit C**, "Aaksa Subscription Agreement").

9. Following Plaintiffs' investments, Hayes Services *outperformed* TJM's revenue and EBIDTA projections for the first several quarters and since then performed at projected levels.

[1] While this version of the Trust Subscription Agreement indicates that the Trust paid $750,000 to acquire 500,000 shares at a price of $1/share, this obvious typo was subsequently clarified by Defendants, making clear that the Trust in fact acquired 750,000 shares (as further reflected in the K-1's Defendants distributed).

Yet, Plaintiffs did not receive *any* distributions until 2024—and then, they received only minimal, tax-related distributions. To date, Plaintiffs have not received any non-tax related distributions from their Hayes Services investment.

10. Given that Hayes Services appeared to be performing as (or better than) projected, Plaintiffs inquired as to why distributions were not being made as planned. In response, McDonough and TJM disclosed—*for the first time*—that Hayes Services' finances had been cross-collateralized with Hayes Commercial to obtain a loan to fund Hayes Commercial's operations. Thus, according to McDonough and TJM, Hayes Services was prevented from making any distributions because its cash collateral was now tied up with the debt service and working capital needs of Hayes Commercial.

11. This flatly contradicted what Plaintiffs had been told when making their investment: Hayes Services and Hayes Commercial were *not* actually separate entities/investments and Hayes Services was *not* a truly independent business; Hayes Services actually had *significant* debt obligations by virtue of this secret cross-collateralization; and, regardless of Hayes Services' performance, *no* distributions could be made because the joint enterprise needed cash.

12. This secret cross-collateralization rendered the basic premises upon which McDonough and TJM solicited Plaintiffs' investments—that Hayes Services and Hayes Commercial represented two distinct investments, that Hayes Services would have no debt, and that Hayes Services would be free to distribute cash to investors—not just misleading, but fundamentally untrue.

13. The cross-collateralization was not disclosed to Plaintiffs until approximately a year after their investments when a TJM executive revealed that McDonough had in fact cross-

collateralized the Hayes businesses prior to Plaintiffs making their investments. The TJM executive stated that he himself only became aware of this arrangement after-the-fact.

14. Had Plaintiffs known that their returns on Hayes Services were effectively tied to the performance and capital needs of Hayes Commercial, they would not have made their investments with TJM.

15. Additionally, McDonough and TJM raised funds from investors through hard money loans to transfer Hayes Mechanical's valuable real estate to another entity owned and controlled by McDonough at reduced prices. After acquiring the real estate, however, McDonough rewrote the leases, increased the rents, and generated over $17M+ in profit that should have gone to Hayes Services and/or Hayes Commercial investors.

16. Upon information and belief, McDonough has engaged in similar real estate carveout schemes in the past with other TJM investments. This conduct shows that McDonough and the entities he controls have a history of deliberate and intentional misrepresentations to extract shareholder value from investors.

17. On January 29, 2025, representatives of the Trust and Aaksa met with McDonough and other TJM representatives. During this meeting, McDonough admitted that Hayes Services was presented as a standalone wind-down investment paying cash distributions but blamed working capital constraints and the economy for the lack of distributions; however, he promised that Hayes Services investors would soon receive a large distribution. That did not happen.

18. On March 5, 2025, Plaintiffs met again with McDonough and representatives of TJM to discuss why the promised distributions remained unpaid. At this meeting, McDonough and representatives of TJM cited "tax issues" from the previous year as the reason. Still, no distributions were paid.

19. Plaintiffs now believe McDonough and TJM *never* intended to pay the distributions TJM projected to investors and always intended to cross-collateralize Hayes Services despite representing the contrary.

20. All Defendants were owned or controlled by McDonough and participated in or had knowledge of this scheme.

21. As a direct consequence of the fraudulent representations made by McDonough and TJM, Plaintiffs have suffered damages and all Defendants should be held jointly and severally liable.

## PARTIES

22. Plaintiffs, Prashanth Reddy Dynasty Trust, an Irrevocable Trust, is administered in Westmont, Illinois, and Aaksa Jai, LLC, is a Delaware limited liability with its principal place of business in Coral Gables, Florida. The Trust is administered in Illinois, and all the members of Aaksa Jai, LLC reside in Florida.

23. Upon information and belief, Thomas J. McDonough, is an individual that resides in Chicago, Illinois.

24. Upon information and belief, TJM-HSH, LLC is a Delaware limited liability company with its principal place of business at 1230 N. State Parkway, Ste. 11A, Chicago, IL 60610.

25. Upon information and belief, TJM Capital Partners LLC is an Illinois limited liability company with its principal place of business at 1230 N. State Parkway, Ste. 11A, Chicago, IL 60610.

26. Upon information and belief, Hayes Services Holdings, LLC, is a Delaware limited liability company with its principal place of business at 5959 S. Harlem Ave, Chicago, Illinois, 60638.

27. At all times relevant to this Complaint, Thomas J. McDonough, is and was the duly authorized agent of TJM-HSH as Chairman and managing member.

28. At all times relevant to this Complaint, Thomas J. McDonough, is and was the duly authorized agent of TJM Capital Partners LLC as Chairman and managing member.

29. At all times relevant to this Complaint, Thomas J. McDonough, is and was the duly authorized agent of Hayes Services as Chairman and managing member.

30. At all times relevant to this Complaint, Thomas J. McDonough and TJM, were the duly authorized agents of Hayes Services. On or around October 25, 2021, Hayes Services Holdings, LLC and Persons set forth as Members, as described in the Hayes LLC Agreement, entered into said LLC Agreement. (**Exhibit D**, "Hayes LLC Agreement").

## JURISDICTION AND VENUE

31. This Court has subject-matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331.

32. This Court has supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

33. This Court has personal jurisdiction over Defendants because Defendants Thomas McDonough, TJM, and Hayes Services reside in Cook County, and the operative agreements—Hayes LLC Agreement, the Trust Subscription Agreement, and the Aaksa Subscription Agreement—contain forum-selection provisions specifying this Court. (*See* Trust Subscription Agreement at 4; Aaksa Subscription Agreement at 4; Hayes LLC Agreement at 31). Additionally, each of the Defendants engaged in continuous and systematic business in Illinois and purposefully availed themselves of this forum, and Plaintiffs' claims arise out of or relate to Defendants' contacts with this forum.

34. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and the operative agreements—the Hayes LLC Agreement, Trust Subscription Agreement, and Aaksa Subscription Agreement—contain forum-selection provisions specifying this District Court. *Id.*

## **BACKGROUND**

### I. **McDonough and TJM Solicit Plaintiffs' Investments Through Material Misstatements**

35. In December 2021, to induce Plaintiffs to invest in Hayes Services, McDonough and TJM represented that TJM would acquire an existing business—Hayes Mechanical—and split it into two independent companies, Hayes Services and Hayes Commercial, each with their own investment thesis:




(Hayes Equity Services Deck at p.1) (highlighting added).

36. Further, the "independent business" that was to be called Hayes Services was going to be acquired in an all-equity transaction and thus carry no senior term loan and zero bank or senior debt:

**Hayes Services Investment Highlights** HAYES MECHANICAL

*Based on Q4 2025 exit, outstanding investment returns of* [redacted]

- Set up the utilities servicing business as an independent business servicing the utilities maintenance market to start
- Bring in proven TJM program to grow the backlog and pipeline significantly
- Growth through internal organic growth and selected acquisitions
- Will structure with an all equity financed purchase
- Key driver for investors - current income on initial equity capital investment
- Other work for 500+ highly skilled union labor workforce Hayes Services has access to through its union relationships – real strategic asset in a skilled labor starved US labor supply
- Redeployment of skilled labor force to the following sectors:
  - Food processing
  - Pharma
  - Renewable energy
  - Electric battery supply chain
  - Cold storage supply chain
  - Pipeline work – re-plumbing of US pipeline system
  - Industrial

[redacted]

- With redeployment of skilled labor force to new industries, anticipate building a [redacted]

*Confidential & Proprietary – TJM Capital Partners, LLC* 2

**Sources & Uses** HAYES MECHANICAL

*($ in thousands)*

[redacted]

*Confidential & Proprietary – TJM Capital Partners, LLC* 12

(*Id.* at pp. 2, 12) (highlighting added) (*see also id*. at p. 1).

37. McDonough and TJM represented that Hayes Services, a boiler servicing business, would be structured as a wind-down investment with investors receiving returns as regular distributions from Hayes Services fulfilling boiler maintenance contracts and with the expectation

that these distributions would start large and reduce over time. TJM modeled projected returns based on this investment thesis and assumptions about the business's performance:

## Income Statement

HAYES MECHANICAL

*($ in thousands)*

[redacted]

*Confidential & Proprietary – TJM Capital Partners, LLC* 13

## Waterfall & Investor Returns

HAYES MECHANICAL

*($ in thousands)*

[redacted]

*Confidential & Proprietary – TJM Capital Partners, LLC* 16

(*Id.* at pp. 13, 16) (highlighting added).

38. McDonough and TJM represented to Plaintiffs that Hayes Commercial, as opposed to Hayes Services, would be structured as a more typical private equity investment in an ongoing boiler business financed by a combination of debt and equity—*i.e.*, owners would continue to invest and grow the business, with investors receiving the bulk of their return upon exit.

39. As Plaintiffs made clear to McDonough and TJM that they were not interested in investing in or growing a boiler business (*i.e.,* Hayes Commercial), but they were interested in the economics and risk presented by a wind-down investment (*i.e.,* Hayes Services).

40. McDonough and TJM represented that (1) Hayes Mechanical was being split into "**2 separate entities/investments**" (*i.e.* Hayes Services and Hayes Commercial) such that Hayes Services would be an "**independent business**"; that (2) Hayes Services would be acquired with an "**all equity financed purchase**" and therefore have "**no senior term loan**" and "**$0**" in "**Bank Debt**" or "**Seller Debt**"; and (3) given the nature of its operations, Hayes Services' capital needs would be low, such that investors would receive cash distributions amounting to approximately [redacted] of their investments within the first three years (and would receive a total of [redacted] of their investments back in distributions by the end of 2025). (*See id.* at pp. 1, 2, 12, 16).

41. Relying on Defendants' representations that an investment in Hayes Services was separate and independent from one in Hayes Commercial, Plaintiffs elected to invest in Hayes Services only.

42. Plaintiffs had previously invested in other opportunities presented by McDonough, and this prior relationship between the parties created a general sense of trust. Thus, Plaintiffs were inclined to rely on McDonough and TJM's representations.

43. On or around December 12, 2021, Hayes Services entered into a Subscription Agreement with the Trust. The Trust, through the Subscription Agreement, agreed to purchase

750,000 Class A Common Units (as defined in the Hayes LLC Agreement) at One Dollar ($1.00) per Unit, for an aggregate purchase price of $750,000.

44. On or around December 15, 2021, Hayes Services entered into a Subscription Agreement with Aaksa. Aaksa, through the Subscription Agreement, agreed to purchase 1,000,000 Class A Common Units (as defined in the Hayes LLC Agreement) at One Dollar ($1.00) per Unit, for an aggregate purchase price of $1,000,000.

## II. <u>Hayes Services Performs As Projected But Defendants Withold Distributions</u>

45. As investors in Hayes Services, Plaintiffs periodically received reports on the business's performance (typically quarterly). Based on those reports, Hayes Services has met—and in many quarters, *exceeded*—TJM's projections as reflected in the Hayes Equity Raise Deck.

46. However, Plaintiffs received *no* distributions whatsoever until 2024, when they received only limited distributions made for tax-related purposes. In fact, to date, Plaintiffs have not received any non-tax related distributions from their investments in Hayes Services.

47. In soliciting their investment, TJM projected that investors like Plaintiffs would have received approximately [redacted] of their investment back by now (and received a total of [redacted] of their investment back in distributions by the end of this year). (*See* Hayes Equity Services Deck at p. 16). Again, based on the financial reports that Plaintiffs have received to date, Hayes Services performed at least as well—if not substantially better—than what TJM projected when raising equity.

48. This disconnect raised a serious question for Plaintiffs: if Hayes Services had reached its performance projections, why had they not received their projected distributions? So, Plaintiffs asked McDonough and TJM.

49. In response, McDonough and TJM revealed that TJM had secretly cross-collateralized the assets of Hayes Services and Hayes Commercial to obtain a loan to fund Hayes Commercial's operations; thus, distributions could not be made to Plaintiffs and other Hayes Services investors because that business's cash was needed to satisfy obligations and covenants in connection with the debt.

50. The cross-collateralization was not disclosed to Plaintiffs until approximately a year after their investments when a TJM executive revealed that McDonough had in fact cross-collateralized the Hayes businesses prior to Plaintiffs making their investments. The TJM executive stated that he himself only became aware of this arrangement after-the-fact.

51. Had Plaintiffs known that their returns on Hayes Services were effectively tied to the performance and capital needs of Hayes Commercial, they would not have made their investments with TJM.

## III. Plaintiffs' Demands and TJM's Continued Shareholder Value Extraction

52. On January 29, 2025, representatives of the Trust and Aaksa met with McDonough and other TJM representatives. During this meeting, McDonough admitted that Hayes Services was represented as a wind-down investment paying cash distributions but blamed working capital constraints and the economy for the lack of distributions; however, he promised that Hayes Services investors would soon receive a large distribution. That did not happen.

53. On March 5, 2025, Plaintiffs met again with McDonough and representatives of TJM to discuss why the promised distribution remained unpaid. At this meeting, McDonough and representatives of TJM cited tax related issues from the previous year as the reason. Still, no distributions were paid.

54. To date, Plaintiffs have received no distributions from Hayes Services other than the limited, tax-related distributions mentioned above.

55. Additionally, McDonough and TJM raised funds from investors through hard money loans to transfer Hayes Mechanical's valuable real estate to another entity owned and controlled by McDonough at reduced prices. After acquiring the real estate, McDonough then rewrote the leases, increased the rents, and generated over $17M+ in profit that should have gone to Hayes Services and/or Hayes Commercial investors.

56. Upon information and belief, McDonough has engaged in similar real estate carveout schemes in the past with other TJM investments. This conduct shows that McDonough and the entities he controls have a history of deliberate and intentional misrepresentations to extract shareholder value from investors.

57. Plaintiffs would not have entered into the Subscription Agreements had they been aware of the false representations by McDonough, TJM, and the entities or representatives under his control.

58. Plaintiffs believe Defendants never intended to pay the distributions TJM projected to investors.

59. Plaintiffs believe Defendants always intended to cross-collateralize Hayes Services despite representing the contrary.

60. Each Defendant participated in or had knowledge of the scheme because each was controlled by McDonough.

## IV. Plaintiffs Were Damaged by Defendants' Misconduct

61. As a result of the fraudulent representations made by McDonough and TJM, Plaintiffs have suffered damages, and all Defendants should be held jointly and severally liable to

Plaintiffs for amounts not less than $1.75 million (the amount of their initial investments) as a result of being defrauded into investing in Hayes Services. Indeed, given Hayes Services' actual performance, had Defendants not secretly cross-collateralized the business and instead made distributions proportionate to their projections, Plaintiffs' investments would now be worth over $3.5 million, and the investments would be far more liquid and not subject to the increased risk profile Hayes Services now faces.

**COUNT I**
**Fraud**
**In violation of the Securities Exchange Act of 1934, Section 10(b), codified at 15 U.S.C. § 78j, Rule 10b-5, codified at 17 CFR 240.10b-5**
**(As Against All Defendants)**

62. Plaintiffs reassert and reallege each and every allegation contained in Paragraphs 1 – 61 outlined above as if fully set forth herein.

63. The Trust Subscription Agreement and the Aaksa Subscription Agreement are investment contracts between McDonough as managing member of Hayes Services and TJM, Hayes Services, and Plaintiffs. The Agreements correctly define the common units purchased by Plaintiffs as "Securities," given Plaintiffs' investment of money into a common enterprise from which they expected to earn and receive profits based on the work of others. Plaintiffs thus hold security interests in Hayes Services as defined by the Securities Exchange Act.

64. In violation of the Securities Exchange Act, Defendants, through their authorized representatives McDonough and TJM, made false and misleading material representations to Plaintiffs and omitted material facts, which would have rendered such statements neither false nor materially misleading in order to induce Plaintiffs to invest in Hayes Services. As detailed herein, in December 2021, McDonough and TJM represented that (1) Hayes Mechanical was being split into "2 separate entities/investments" (*i.e.* Hayes Services and Hayes Commercial) such that Hayes Services would be an "independent business"; that (2) Hayes Services would be acquired with an

"all equity financed purchase" and therefore have "no senior term loan" and "$0" in "Bank Debt" or "Seller Debt"; and (3) given the nature of its operations, Hayes Services' capital needs would be low, such that investors would receive cash distributions amounting to approximately [redacted] of their investments within the first three years (and would receive a total of [redacted] of their investments back in distributions by the end of 2025). (*See* Hayes Equity Services Deck at pp. 1, 12, 16-17). Relying on these representations, Plaintiffs elected to invest in Hayes Services only.

65. These representations were false and misleading, and McDonough, TJM, and Hayes Services knew they were false when made because they knew that they intended to (or had already) cross-collateralized Hayes Services with Hayes Commercial. These misrepresentations were made by McDonough and TJM prior to Plaintiffs' investment in Hayes Services with the intent that Plaintiffs would rely on them to make their investment. To the extent McDonough and TJM knew these representations were false when they made them, both McDonough and TJM eventually came to learn they were false; however, Defendants intentionally concealed the truth from Plaintiffs and instead encouraged and assured Plaintiffs to believe and rely upon their prior misrepresentations.

66. McDonough and TJM, on behalf of each Defendant, also knowingly or recklessly omitted and concealed material facts from Plaintiffs, including the following facts that McDonough and TJM knew would have corrected their prior representations or rendered their representations not misleading: (i) Hayes Services and Hayes Commercial assets would be cross-collateralized to obtain a loan to fund Hayes Commercial's operations; (ii) the cross-collateralization was completed prior to the close of the investments; and (iii) the cross-collateralization would mean that Hayes Services could not make its projected distributions to investors regardless of meeting its EBITDA projections.

67. McDonough and TJM, on behalf of each Defendant, made misrepresentations or omitted the material facts to induce Plaintiffs to invest $1.75 million in Hayes Services. Plaintiffs invested in Hayes Services in reliance upon McDonough and TJM's representations and omission and concealment of material facts.

68. As a direct and proximate cause of Defendants' knowing and intentional misrepresentations and omissions, Plaintiffs suffered an economic loss, including, without limitation, direct costs incurred as a result of the breach, lost profits, and the amount that Plaintiffs paid for Hayes Services, which amounts to no less than $1.75 million, as a result of being defrauded into investing into Hayes Services, a company that was secretly cross-collateralized.

**COUNT II**
**Fraud**
**In violation of the Illinois Securities Law of 1953, codified at 815 ILCS 5/12**
**(As Against All Defendants)**

69. Plaintiffs reassert and reallege each and every allegation contained in Paragraphs 1 – 68 outlined above as if fully set forth herein.

70. Illinois Securities Law, as amended, 815 ILCS §§ 5/, et seq., (the "Illinois Securities Law") is designed to protect innocent persons who might be induced to invest in speculative enterprises over which they have little control. To effectuate the goals of the Illinois Securities Law, the statute should be given a liberal construction; thus, courts construe the term "security" broadly. It shall be a violation of the Illinois Securities Law for any person:

(F) To engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof.

(G) To obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to

make the statements made, in the light of the circumstances under which they are made, not misleading.

(H) To sign or circulate any statement, prospectus, or other paper or document required by any provision of this Act or pertaining to any security knowing or having reasonable grounds to know any material representation therein contained to be false or untrue.

(I) To employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly.

815 ILCS § 5/12(F–I).

71. The Illinois Securities Law provides that "every sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser exercised." 815 ILCS § 5/13.

72. Pursuant to Section 5/13(A)(1) of the Illinois Securities Law, "any person who shall have participated or aided in making the sale shall be jointly and severally liable to the purchaser for the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated ... less any income or other amounts received by the purchaser on the securities."

73. The Defendants violated the Illinois Securities Law of 1953, *as amended*, 815 ILCS §§ 5, *et seq*., in that, as described herein, they offered and sold securities to the Plaintiffs in Illinois by means of untrue statements of material fact.

74. The Trust Subscription Agreement and the Aaksa Subscription Agreement are investment contracts between McDonough as managing member of Hayes Services and TJM, Hayes Services, and Plaintiffs. The Agreements correctly define the common units purchased by Plaintiffs as "Securities," given Plaintiffs' investment of money into a common enterprise from

which they expected to earn and receive profits based on the work of others. Plaintiffs thus hold security interests in Hayes Services as defined by the Illinois Securities Law.

75. In violation of the Illinois Securities Law, Defendants, through their authorized representatives McDonough and TJM, made false and misleading material representations to Plaintiffs and omitted material facts, which would have rendered such statements neither false nor materially misleading in order to induce Plaintiffs to invest in Hayes Services. As detailed herein, in December 2021, McDonough and TJM represented that (1) Hayes Mechanical was being split into "2 separate entities/investments" (*i.e.* Hayes Services and Hayes Commercial) such that Hayes Services would be an "independent business"; that (2) Hayes Services would be acquired with an "all equity financed purchase" and therefore have "no senior term loan" and "$0" in "Bank Debt" or "Seller Debt"; and (3) given the nature of its operations, Hayes Services' capital needs would be low, such that investors would receive cash distributions amounting to approximately [redacted] of their investments within the first three years (and would receive a total of [redacted] of their investments back in distributions by the end of 2025). (*See id.* at pp. 1, 12, 16-17). Relying on these representations, Plaintiffs elected to invest in Hayes Services only.

76. These representations were false and misleading, and McDonough, TJM, and Hayes Services knew they were false when made because they knew that they intended to (or had already) cross-collateralized Hayes Services with Hayes Commercial. These misrepresentations were made by McDonough and TJM prior to Plaintiffs' investment in Hayes Services with the intent that Plaintiffs would rely on them to make their investment. To the extent McDonough and TJM knew these representations were false when they made them, both McDonough and TJM eventually came to learn they were false; however, Defendants intentionally concealed the truth

from Plaintiffs and instead encouraged and assured Plaintiffs to believe and rely upon their prior misrepresentations.

77. McDonough and TJM, on behalf of each Defendant, also knowingly or recklessly omitted and concealed material facts from Plaintiffs, including the following facts that McDonough and TJM knew would have corrected their prior representations or rendered their representations not misleading: (i) Hayes Services and Hayes Commercial assets would be cross-collateralized to obtain a loan to fund Hayes Commercial's operations; (ii) the cross-collateralization was completed prior to the close of the investments; and (iii) the cross-collateralization would mean that Hayes Services could not make its projected distributions to investors regardless of meeting its EBITDA projections.

78. McDonough and TJM, on behalf of each Defendant, made misrepresentations or omitted the material facts to induce Plaintiffs to invest $1.75 million in Hayes Services. Plaintiffs invested in Hayes Services in reliance upon McDonough and TJM's representations and omission and concealment of material facts.

79. As a direct and proximate cause of Defendants' knowing and intentional misrepresentations and omissions, Plaintiffs suffered an economic loss, including, without limitation, direct costs incurred as a result of the breach, lost profits, and the amount that Plaintiffs paid for Hayes Services, which amounts to no less than $1.75 million, as a result of being defrauded into investing into Hayes Services, a company that was secretly cross-collateralized.

**COUNT III**
**<u>Illinois Fraudulent Inducement</u>**
**(As Against All Defendants)**

80. Plaintiffs reassert and reallege each and every allegation contained in Paragraphs 1 – 79 outlined above as if fully set forth herein.

81. Under Illinois law, the elements for fraud based on omissions are (1) concealment of a material fact where there is a duty to disclose; (2) the omission is known or believed to be false by the person making the representations; (3) intent to induce the plaintiff to act; (4) the plaintiff acted in justifiable reliance based on truth of the representation by the defendant; and (5) damages resulting from the plaintiffs reliance.

82. Defendants, through their authorized representatives McDonough and TJM, made false and misleading material representations to Plaintiffs and omitted material facts, which would have rendered such statements neither false nor materially misleading in order to induce Plaintiffs to invest in Hayes Services. As detailed herein, in December 2021, McDonough and TJM represented that (1) Hayes Mechanical was being split into "2 separate entities/investments" (*i.e.* Hayes Services and Hayes Commercial) such that Hayes Services would be an "independent business"; that (2) Hayes Services would be acquired with an "all equity financed purchase" and therefore have "no senior term loan" and "$0" in "Bank Debt" or "Seller Debt"; and (3) given the nature of its operations, Hayes Services' capital needs would be low, such that investors would receive cash distributions amounting to approximately [redacted] of their investments within the first three years (and would receive a total of [redacted] of their investments back in distributions by the end of 2025). (*See id.* at pp. 1, 12, 16–17). Relying on these representations, Plaintiffs elected to invest in Hayes Services only.

83. These representations were false and misleading, and McDonough, TJM, and Hayes Services knew they were false when made because they knew that they intended to (or had already) cross-collateralized Hayes Services with Hayes Commercial. These misrepresentations were made by McDonough and TJM prior to Plaintiffs' investment in Hayes Services with the intent that Plaintiffs would rely on them to make their investment. To the extent McDonough and

TJM knew these representations were false when they made them, both McDonough and TJM eventually came to learn they were false; however, Defendants intentionally concealed the truth from Plaintiffs and instead encouraged and assured Plaintiffs to believe and rely upon their prior misrepresentations.

84. McDonough and TJM, on behalf of each Defendant, also knowingly or recklessly omitted and concealed material facts from Plaintiffs, including the following facts that McDonough and TJM knew would have corrected their prior representations or rendered their representations not misleading: (i) Hayes Services and Hayes Commercial assets would be cross-collateralized to obtain a loan to fund Hayes Commercial's operations; (ii) the cross-collateralization was completed prior to the close of the investments; and (iii) the cross-collateralization would mean that Hayes Services could not make its projected distributions to investors regardless of meeting its EBITDA projections.

85. McDonough and TJM, on behalf of each Defendant, made misrepresentations or omitted the material facts to induce Plaintiffs to invest $1.75 million in Hayes Services. Plaintiffs invested in Hayes Services in reliance upon McDonough and TJM's representations and omission and concealment of material facts.

86. As a direct and proximate cause of Defendants' knowing and intentional misrepresentations and omissions, Plaintiffs suffered an economic loss, including, without limitation, direct costs incurred as a result of the breach, lost profits, and the amount that Plaintiffs paid for Hayes Services, which amounts to no less than $1.75 million, as a result of being defrauded into investing into Hayes Services, a company that was secretly cross-collateralized.

**COUNT IV**
**Illinois Common Law Fraud**
**(As Against All Defendants)**

87. Plaintiffs reassert and reallege each and every allegation contained in Paragraphs 1 – 86 outlined above as if fully set forth herein.

88. Defendants, through their authorized representatives McDonough and TJM, made false and misleading material representations to Plaintiffs and omitted material facts, which would have rendered such statements neither false nor materially misleading in order to induce Plaintiffs to invest in Hayes Services. As detailed herein, in December 2021, McDonough and TJM represented that (1) Hayes Mechanical was being split into "2 separate entities/investments" (*i.e.* Hayes Services and Hayes Commercial) such that Hayes Services would be an "independent business"; that (2) Hayes Services would be acquired with an "all equity financed purchase" and therefore have "no senior term loan" and "$0" in "Bank Debt" or "Seller Debt"; and (3) given the nature of its operations, Hayes Services' capital needs would be low, such that investors would receive cash distributions amounting to approximately [redacted] of their investments within the first three years (and would receive a total of [redacted] of their investments back in distributions by the end of 2025). (*See id.* at pp. 1, 12, 16–17). Relying on these representations, Plaintiffs elected to invest in Hayes Services only.

89. These representations were false and misleading, and McDonough, TJM, and Hayes Services knew they were false when made because they knew that they intended to (or had already) cross-collateralized Hayes Services with Hayes Commercial. These misrepresentations were made by McDonough and TJM prior to Plaintiffs' investment in Hayes Services with the intent that Plaintiffs would rely on them to make their investment. To the extent McDonough and TJM knew these representations were false when they made them, both McDonough and TJM

eventually came to learn they were false; however, Defendants intentionally concealed the truth from Plaintiffs and instead encouraged and assured Plaintiffs to believe and rely upon their prior misrepresentations.

90. McDonough and TJM, on behalf of each Defendant, also knowingly or recklessly omitted and concealed material facts from Plaintiffs, including the following facts that McDonough and TJM knew would have corrected their prior representations or rendered their representations not misleading: (i) Hayes Services and Hayes Commercial assets would be cross-collateralized to obtain a loan to fund Hayes Commercial's operations; (ii) the cross-collateralization was completed prior to the close of the investments; and (iii) the cross-collateralization would mean that Hayes Services could not make its projected distributions to investors regardless of meeting its EBITDA projections.

91. McDonough and TJM, on behalf of each Defendant, made misrepresentations or omitted the material facts to induce Plaintiffs to invest $1.75 million in Hayes Services. Plaintiffs invested in Hayes Services in reliance upon McDonough and TJM's representations and omission and concealment of material facts.

92. As a direct and proximate cause of Defendants' knowing and intentional misrepresentations and omissions, Plaintiffs suffered an economic loss, including, without limitation, direct costs incurred as a result of the breach, lost profits, and the amount that Plaintiffs paid for Hayes Services, which amounts to no less than $1.75 million, as a result of being defrauded into investing into Hayes Services, a company that was secretly cross-collateralized.

**COUNT V**
**Illinois Fraudulent Misrepresentation**
**(As Against All Defendants)**

93. Plaintiffs reassert and reallege each and every allegation contained in Paragraphs 1 – 92 outlined above as if fully set forth herein.

94. Defendants, through their authorized representatives McDonough and TJM, made false and misleading material representations to Plaintiffs and omitted material facts, which would have rendered such statements neither false nor materially misleading in order to induce Plaintiffs to invest in Hayes Services. As detailed herein, in December 2021, McDonough and TJM represented that (1) Hayes Mechanical was being split into "2 separate entities/investments" (*i.e.* Hayes Services and Hayes Commercial) such that Hayes Services would be an "independent business"; that (2) Hayes Services would be acquired with an "all equity financed purchase" and therefore have "no senior term loan" and "$0" in "Bank Debt" or "Seller Debt"; and (3) given the nature of its operations, Hayes Services' capital needs would be low, such that investors would receive cash distributions amounting to approximately [redacted] of their investments within the first three years (and would receive a total of [redacted] of their investments back in distributions by the end of 2025). (*See id.* at pp. 1, 12, 16–17). Relying on these representations, Plaintiffs elected to invest in Hayes Services only.

95. These representations were false and misleading, and McDonough, TJM, and Hayes Services knew they were false when made because they knew that they intended to (or had already) cross-collateralized Hayes Services with Hayes Commercial. These misrepresentations were made by McDonough and TJM prior to Plaintiffs' investment in Hayes Services with the intent that Plaintiffs would rely on them to make their investment. To the extent McDonough and TJM knew these representations were false when they made them, both McDonough and TJM eventually came to learn they were false; however, Defendants intentionally concealed the truth

from Plaintiffs and instead encouraged and assured Plaintiffs to believe and rely upon their prior misrepresentations.

96. McDonough and TJM, on behalf of each Defendant, also knowingly or recklessly omitted and concealed material facts from Plaintiffs, including the following facts that McDonough and TJM knew would have corrected their prior representations or rendered their representations not misleading: (i) Hayes Services and Hayes Commercial assets would be cross-collateralized to obtain a loan to fund Hayes Commercial's operations; (ii) the cross-collateralization was completed prior to the close of the investments; and (iii) the cross-collateralization would mean that Hayes Services could not make its projected distributions to investors regardless of meeting its EBITDA projections.

97. McDonough and TJM, on behalf of each Defendant, made misrepresentations or omitted the material facts to induce Plaintiffs to invest $1.75 million in Hayes Services. Plaintiffs invested in Hayes Services in reliance upon McDonough and TJM's representations and omission and concealment of material facts.

98. As a direct and proximate cause of Defendants' knowing and intentional misrepresentations and omissions, Plaintiffs suffered an economic loss, including, without limitation, direct costs incurred as a result of the breach, lost profits, and the amount that Plaintiffs paid for Hayes Services, which amounts to no less than $1.75 million, as a result of being defrauded into investing into Hayes Services, a company that was secretly cross-collateralized.

**COUNT VI**
**<u>Illinois Negligent Misrepresentation</u>**
**(As Against All Defendants)**

99. Plaintiffs reassert and reallege each and every allegation contained in Paragraphs 1 – 98 outlined above as if fully set forth herein.

100. Under Illinois law, negligent misrepresentation is essentially the same as fraud, except that (1) the defendant's negligence or carelessness when communicating material facts is considered, and (2) the plaintiff must allege a duty was owed by the defendant to communicate accurate information. The elements of fraud in the inducement of the contract are (1) concealment of a material fact where there is a duty to disclose; (2) the omission is known or believed to be false by the person making the representations; (3) intent to induce the plaintiff to act; (4) the plaintiff acted in justifiable reliance based on truth of the representation by the defendant; and (5) damages resulting from the plaintiffs reliance.

101. Due to the Defendants' material misrepresentations, the consent by Plaintiffs for the investments were not informed or voluntary; in the alternative Plaintiffs allege negligent misrepresentation.

102. At all times relevant to this Complaint, McDonough and TJM were in the business of supplying information for the guidance of others in TJM's investment and business transactions. During the foregoing time period, McDonough and TJM representatives engaged in an aggressive equity raise for Hayes Services and Hayes Commercial.

103. McDonough and TJM had a duty to Plaintiffs to disseminate information about TJM and Hayes Services and the risks of future cross-collateralization in an honest, truthful, careful, and non-negligent manner.

104. McDonough, TJM, and Hayes Services negligently, carelessly and without due care represented that Hayes Services would be a wind-down investment paying cash distributions while never mentioning the potential of Hayes Services being cross-collateralized even when it had the opportunity during the Equity Raise presentation and subsequent conversations pre-funding.

105. McDonough, TJM, and Hayes Services knew Plaintiffs wanted to invest in Hayes Services instead of Hayes Commercial because they wanted to be paid distributions immediately instead of being paid on exit, but they failed to disclose that the Hayes Services' investment structure would change.

106. Plaintiffs justifiably and reasonably relied on McDonough and TJM's representations to their detriment.

107. As a direct and proximate result of the negligence by McDonough, TJM, and Hayes Services, Plaintiffs have suffered damages. Plaintiffs suffered an economic loss, including, without limitation, direct costs incurred as a result of the negligence, lost profits, and the amount that Plaintiffs paid for Hayes Services, which amounts to no less than $1.75 million, as a result of investing into Hayes Services, a company that was secretly cross-collateralized.

**COUNT VII**
**Equitable Remedies of Rescission for Fraud**
**(As Against Hayes Services)**

108. Plaintiffs reassert and reallege each and every allegation contained in Paragraphs 1 – 107 outlined above as if fully set forth herein.

109. Due to the Defendants' material misrepresentations, the consent by Plaintiffs for the investments were not informed or voluntary.

110. Equity demands that the Subscription Agreements be rescinded and Plaintiffs restored to their original positions through a restitution amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and award:

a. An award of compensatory and restitution damages for the foregoing claims, plus interest, fees, and costs as allowed by law, or such other sum as may be proven at trial;

b. Recission of the Trust Subscription Agreement and the Aaksa Subscription Agreement;

c. An award of rescissory damages for the foregoing claims, plus interest, fees, and costs as allowed by law, or such other sum as may be proven at trial;

d. An award of pre- and post-judgment interest to the extent applicable;

e. Awarding Plaintiffs their reasonable attorneys' fees, expenses, and costs;

f. Awarding such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Dated: November 18, 2025

Respectfully submitted,

*/s/ Manish K. Mehta*

Manish Mehta (ARDC #6290204)
SaDella Duval d'Adrian (ARDC #6345670)
(*Pro Hac Vice Forthcoming*)
Samson Widerman (ARDC #6354059)
(*Pro Hac Vice Forthcoming*)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 S. Wacker Drive, Suite 1600
Chicago, Illinois 60606
Telephone: 312.212.4949
MMehta@beneschlaw.com
SDuval@beneschlaw.com
SWiderman@beneschlaw.com

Matthew Fox (NY #5305883)
(*Pro Hac Vice Forthcoming*)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
1155 Avenue of the Americas, Floor 26
New York, NY 10036
Telephone: 646.593.7050
MFox@beneschlaw.com
*Attorneys for Plaintiffs Prashanth Reddy Dynasty Trust and Aaksa Jai, LLC*