UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PRASHANTH REDDY DYNASTY TRUST and AAKSA JAI, LLC, | | |
| Plaintiffs, | | No. 25 CV 14128 |
| v. | | Judge Manish S. Shah |
| THOMAS J. MCDONOUGH, et al., | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Prashanth Reddy Dynasty Trust and Aaksa Jai, LLC collectively invested $1.75 million into defendant Hayes Services Holdings, LLC, a company managed and controlled by defendants Thomas McDonough and TJM (TJM-HSH, LLC and TJM Capital Partners LLC). Defendants represented that Hayes Services would be independent from Hayes Commercial. In reality, defendants secretly cross-collateralized the entities and plaintiffs did not receive their expected distributions. Plaintiffs bring claims for fraud under the Securities Exchange Act of 1934 and the Illinois Securities Law of 1953, as well as claims for fraudulent inducement, common-law fraud, fraudulent misrepresentation, and negligent misrepresentation against all defendants. Plaintiffs also seek the equitable remedy of recission for fraud against Hayes Services. Defendants move to dismiss all counts under Rule 12(b)(6). For the reasons discussed below, defendants' motion to dismiss is granted.

## I.  Legal Standards

Federal Rule of Civil Procedure 12(b)(6) governs dismissals based on failure to state a claim upon which relief may be granted. To survive a 12(b)(6) motion, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a complaint's sufficiency, courts "accept as true all well-pled facts and make any reasonable inferences in the non-movant's favor." *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022).

Heightened pleading requirements apply to complaints alleging fraud. *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 495 (7th Cir. 2025). A plaintiff alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Under Rule 9(b), the plaintiff must identify "the who, what, when, where, and how" of the fraud. *Wertymer*, 142 F.4th at 495 (citation omitted).

## II.  Background

In December 2021, defendants Thomas McDonough and TJM solicited plaintiffs Prashanth Reddy Dynasty Trust and Aaksa Jai, LLC to invest in defendant Hayes Services. [1] ¶ 35.[1] Defendants represented that TJM would acquire an

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers are taken from the CM/ECF header placed at the top of the filing. The facts are taken from the complaint, [1], and the exhibits attached to the complaint, [1-1], [1-2], [1-3], and [1-4].

2

existing business—Hayes Mechanical—and split it into two independent companies, Hayes Services and Hayes Commercial. [1] ¶ 35. Defendants further represented that Hayes Services would be acquired in an all-equity transaction and thus carry no senior term loan and no bank or senior debt. [1] ¶ 36.

In contrast to Hayes Commercial, which would be structured as a typical private equity investment with investors receiving the bulk of their return upon exit, defendants represented that Hayes Services would be structured as a wind-down investment with investors receiving returns as regular distributions. [1] ¶¶ 37–38. Plaintiffs made clear to McDonough and TJM that they were interested only in Hayes Services and not in Hayes Commercial. [1] ¶ 39.

McDonough and TJM made three distinct representations: (1) Hayes Mechanical was being split into two separate entities and investments; (2) Hayes Services would be acquired with an all equity-financed purchase; and (3) Hayes Services' capital needs would be low such that investors would receive certain cash distributions within the first three years. [1] ¶ 40. Relying on these representations, plaintiffs invested in Hayes Services. [1] ¶ 41.

Plaintiffs entered into Subscription Agreements with Hayes Services. [1] ¶¶ 43–44. Plaintiff Prashanth Reddy Dynasty Trust made an aggregate purchase of $750,000 (in the form of 750,000 Class A Common Units) and plaintiff Aaksa Jai made an aggregate purchase of $1,000,000 (in the form of 1,000,000 Class A Common Units). [1] ¶¶ 43–44; [1-2]; [1-3]. Section 2 of the Subscription Agreements is titled "Representations and Warranties of Subscriber." [1-2] at 2; [1-3] at 2. Among other

things, the subscribers acknowledged that the company "is a highly speculative venture involving a high degree of financial risk" and that they are "familiar with the nature of, and risks attendant to, investments in securities." [1-2] at 3; [1-3] at 3. The Agreements also required plaintiffs to confirm that they had "received no representations, warranties or written communications with respect to the offering of the Securities other than as set forth herein." [1-2] at 3; [1-3] at 3.

As investors in Hayes Services, plaintiffs periodically received reports on the business's performance. [1] ¶ 45. Hayes Services met—and sometimes exceeded—TJM's projections, yet plaintiffs received only limited distributions. [1] ¶ 46. In explaining the disconnect between the business's performance and the limited distributions, McDonough and TJM revealed that TJM had secretly cross-collateralized the assets of Hayes Services and Hayes Commercial. [1] ¶¶ 48–49. In other words, plaintiffs' returns on Hayes Services were tied to the performance and capital needs of Hayes Commercial. [1] ¶ 51. This cross-collateralization was not disclosed to plaintiffs until about a year after their investments when a TJM executive revealed that McDonough had cross-collateralized the Hayes businesses before plaintiffs had invested. [1] ¶ 50.

Plaintiffs allege that McDonough and the entities he controls have a history of deliberate and intentional misrepresentations to extract shareholder value from investors. [1] ¶ 56. Plaintiffs would not have entered into the Subscription Agreements had they been made aware of the false representations made by

4

defendants. [1] ¶ 57. Plaintiffs' investments would now be worth over $3.5 million had defendants not cross-collateralized the businesses. [1] ¶ 61.

Plaintiffs bring fraud claims against all defendants under the Securities Exchange Act of 1934 and the Illinois Securities Law of 1953. [1] ¶¶ 62–79. They also bring state-law claims for fraudulent inducement, common-law fraud, fraudulent misrepresentation, and negligent misrepresentation based on the same conduct. [1] ¶¶ 80–107. Finally, plaintiffs bring a state-law claim for equitable recission for fraud against Hayes Services. [1] ¶¶ 108–110.

## III. Analysis

### A. Federal Securities Fraud

To state a claim for federal securities fraud, a complaint must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Cornielsen v. Infinium Cap. Mgmt.*, 916 F.3d 589, 598 (7th Cir. 2019) (quoting *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008)). Defendants argue that plaintiffs' federal claim should be dismissed because plaintiffs disclaimed reliance on any representations that may have been made before signing their Subscription Agreements and therefore cannot plausibly allege the fourth requirement of a federal securities fraud claim. [23] at 10–12.

Plaintiffs do not challenge the enforceability of the non-reliance provision of the Subscriber Agreements. Instead, they argue that non-reliance clauses bar fraud

5

claims only where the agreement contradicts the alleged misrepresentations. [30] at 9. Here, "nothing in the Subscription Agreements contradicted what Defendants had previously represented." [30] at 11.

The non-reliance clause here applies to all earlier representations, whether contradictory or not. In *Cornielsen*, the plaintiff similarly alleged claims for federal securities fraud after the defendants made several misrepresentations and omissions at "town hall" meetings to discuss an equity conversion proposal. 916 F.3d at 594. The plaintiffs signed Subscription Agreements setting forth certain warranties and including a non-reliance clause. *Id.* at 595. The court held that "the written representations in the Subscription Agreement preclude Plaintiffs from now claiming that they chose to participate in the Equity Conversion because they reasonably relied on the Individual Defendants' oral statements made during the town hall meetings." *Id.* at 597–98.

In reaching this conclusion, the court noted that the agreements had contained ample cautionary language about the risks associated with the investment. *Id.* at 597. Further, the plaintiffs "had every opportunity to read the agreement and investigate the company as he or she deemed appropriate to evaluate the merits and risk of the investment." *Id.* Crucially, the court did not say anything about whether the representations made during the town halls contradicted the Subscriber Agreements. Plaintiffs' assertion that "*Cornielsen* turned on the presence of written representations that directly contradicted the alleged oral statements and on

plaintiffs' insider access to information" is not an accurate reading of the case. [30] at 10 (citing *Cornielsen*, 916 F.3d at 597–98).

Plaintiffs cite two district court cases that appear to be in tension with *Cornielsen*. [30] at 10–11 (first citing *Reis Robotics USA v. Concept Indus.*, 462 F.Supp.2d 897, 909–10 (N.D. Ill. 2006); and then citing *Hartmarx Corp. v. JBA Int'l, Inc.*, 2022 WL 406973 (N.D. Ill. Mar. 15, 2002)). But those cases predate *Cornielsen* and are not persuasive. Regardless of whether *Reis Robotics* and *Hartmarx* accurately interpreted existing precedent, a narrow reading of non-reliance clauses is not supported by *Cornielsen*.

I agree with defendants that the circumstances surrounding *Cornielsen* are analogous to those in the present case. [33] at 5. Therefore, the non-reliance clause in the Subscriber Agreements precludes plaintiffs' claims of deceit by prior representation. Count I is dismissed.[2]

## B.    Illinois Securities Fraud

The parties agree that because "Illinois courts look to federal securities law to interpret claims brought under state law, the federal and state claims rise and fall together." [23] at 17 (quoting *Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th 651, 660 (7th Cir. 2024)); [30] at 19 (same). Having found that plaintiffs cannot establish the reliance element of a federal securities fraud claim, I conclude that their

---

[2] Defendants also argue that plaintiffs' federal securities fraud claim is time-barred. [23] at 15–16. "An affirmative defense, like the statute of limitations, can rarely be resolved on a motion to dismiss." *McDonald v. U.S. Postal Serv.*, 2025 WL 3540859, at \*3 (7th Cir. Dec. 10, 2025). Because I have found that plaintiffs' federal claim fails to plausibly allege reliance, I need not address the merits of this defense.

Illinois securities fraud claim fails for the same reason. *See also Tirapelli v. Advanced Equities, Inc.*, 351 Ill.App.3d 450, 455–58 (2004) (explaining that reliance is an element of the Illinois Securities Law and concluding that reliance was unreasonable as a matter of law where the parties signed a contract containing a non-reliance clause). Count II is dismissed.

### C. Other State-Law Claims

Plaintiffs' remaining state-law claims are based on the same alleged fraudulent conduct and therefore fail for the same reason. Indeed, to state a claim for fraud in Illinois, a complaint must allege five elements, including "action by the other in reliance on the truthfulness of the statement." *Benson v. Stafford*, 407 Ill.App.3d 902, 921 (2010). Because plaintiffs cannot plead reliance, they cannot plead common-law fraud, fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, or equitable recission for fraud. *See, e.g.*, *Tirapelli*, 351 Ill.App.3d at 455 (reliance is an element of common-law fraud); *Doe v. Dilling*, 228 Ill.2d 324, 343, 360 (2008) (reliance is an element of both fraudulent and negligent misrepresentation); *Colagrossi v. UBS Sec., LLC*, 2015 WL 5042899, at *9 (Ill. App. Ct. Aug. 21, 2015) (reliance is an element of fraudulent inducement); *23-25 Bldg. P'ship v. Testa Produce, Inc.*, 381 Ill.App.3d 751, 758 (2008) (reliance is an element of an equitable claim for recission). Counts III through VII are dismissed.

### D. Dismissal Is with Prejudice

Plaintiffs' claims are dismissed with prejudice. Though plaintiffs sought leave to amend their complaint to cure any potential problem with notice of recission under

state law, *see* [30] at 19, the dismissal here rests exclusively on the issue of reliance. Amendment would be futile. Plaintiffs do not challenge the enforceability of the Subscriber Agreements, and plaintiffs cannot amend around the fact that the non-reliance clause precludes their claims for fraud based on representations made to them before signing the agreements.

In their motion to dismiss, defendants also challenged the sufficiency of plaintiffs' complaint under Rule 9(b) and the Private Securities Litigation Reform Act. [23] at 9–15. But while the heightened pleading standard of Rule 9(b) and the PLSRA require plaintiffs to plead with particularity, they are not required to plead more than they would be required to prove at trial. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 328 (2007). Plaintiffs likely have adequately pled the "who, what, when, where, and how" of defendants' misconduct: the complaint identifies *who* made the alleged misrepresentations (McDonough) to whom (plaintiffs' representatives); *what* those alleged misrepresentations were (that Hayes Services would be an independent wind-down investment); *when* and *where* they were made (in December 2021 during, at least, a slide deck presentation); and *how* the alleged misrepresentations fraudulently induced plaintiffs to make investments that they would not otherwise have made (plaintiffs did not want to invest in a growing boiler business, but in a winding down service business).

Finally, defendants argue that plaintiffs failed to allege a knowing misrepresentation or omission giving rise to their federal securities fraud claim. [23] at 12–15. Specifically, defendants contend that the forward-looking nature of the

alleged misrepresentations are protected by the PSLRA's safe-harbor provision. [23] at 12–13 (citing *Matrixx Initiatives v. Siracusano*, 563 U.S. 27, 48 n.14 (2011) ("[I]f the alleged misrepresentation or omission is a 'forward-looking statement,' the required level of scienter is 'actual knowledge.'")).

But taking the allegations as true, and drawing inferences in plaintiffs' favor, they have adequately alleged that defendants' statements were about the fundamental nature of plaintiffs' investment and the structure of Hayes Services, and were untrue at the time of the misrepresentation. *See, e.g.*, [1] ¶ 12 (alleging that defendants had represented that Hayes Services and Hayes Commercial represented two distinct investments); [1] ¶ 66 (alleging that the cross-collateralization was completed prior to the close of the investments).

Further, the fact that plaintiffs relied on an anonymous TJM executive to support their allegation about the timing of the cross-collateralization does not render it insufficiently pled. Anonymity is not automatically disqualifying. *See Makor Issues & Rts., Ltd. v. Tellabs Inc.*, 513 F.3d 702, 712 (7th Cir. 2008). As a TJM executive, the anonymous source was "in a position to know at first hand the facts to which [he is] prepared to testify." *Id.* The allegation merely points to evidence plaintiffs expect to introduce to show that McDonough knew about the cross-collateralization before plaintiffs invested but falsely (knowingly and intentionally) told them that the investment was in an independent Hayes Services. But as discussed above, the complaint is nevertheless dismissed due to the presence of a non-reliance clause in the Subscriber Agreements.

## IV.    Conclusion

Defendants' motion to dismiss, [22], is granted. The case is dismissed with prejudice. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: June 29, 2026

11